UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THE HAWTHORN CORPORATION,

        Plaintiff,

v.                          CASE NO.  8:13-CV-2895-T-17MAP

UNITED STATES OF AMERICA,

        Defendant.

_____/

ORDER

This cause is before the Court on:

Dkt. 5    Motion to Dismiss
Dkt. 7    Opposition
Dkt. 13  Reply

Plaintiff's Complaint is based on the duty to exercise reasonable care in the execution of official duties. Plaintiff The Hawthorn Corporation ("THC") seeks a judgment against Defendant United States of America for damages, interest, costs and other relief.

Plaintiff THC asserts Plaintiff's claims against employees of the United States government acting in their official capacity. Dr. Chester A. Gipson is Deputy Administrator of Animal Care for the USDA's Animal and Plant Health Inspection Service ("APHIS"). Elizabeth Goldentyer, D.V.M. is the Director, Eastern Region, APHIS Animal Care. Cynthia DiGesualdo, D.V.M. is an APHIS animal welfare inspector.

Case No. 8:13-CV-2895-T-17MAP

Plaintiff THC is licensed by the United States Department of Agriculture as an animal exhibitor pursuant to the Animal Welfare Act ("AWA"), 7 U.S.C. Sec. 2131 et seq.   Plaintiff THC hired Lancelot Kollman in 2012 as a trainer for Plaintiff's group of sixteen white tigers.  (Dkt. 1, p. 2, par. 7).

In the Complaint, Plaintiff The Hawthorn Corporation ("THC") alleges the following claims:

Count I          Negligence attributable to Elizabeth Goldentyer

a.  failed to notify APHIS inspectors that Kollman could not handle, train or present tigers for THC;

b.  failed to instruct APHIS inspectors to report that THC was in violation of the AWA and its regulations if they found that Kollman was handling, training or presenting tigers for THC;

c.  failed to tell THC that Kollman could not handle, train or present tigers under its license

Count II          Negligence attributable to Dr. Gipson

a.  failed to notify APHIS inspectors that Kollman could not handle, train or present tigers for THC;

b.  failed to instruct APHIS inspectors to report that THC was in violation of the AWA and its regulations if they found that Kollman was handling, training or presenting tigers for THC;

c.  failed to tell THC that Kollman could not handle, train or present tigers under its license;

2

Case No. 8:13-CV-2895-T-17MAP

Count III      Negligence attributable to Cynthia DiGesualdo

           a. failed to tell THC that Kollman could not
handle, train or present tigers under its license.

In each Count, Plaintiff THC alleges that Defendant proximately caused
Plaintiff's damages, including but not limited to the loss of revenues from the Soul
Circus contract as well as substantial costs in the transportation and upkeep of the
tigers, such as approximately 7,000 pounds of meat to feed the tigers, freight costs,
additional handlers, and sawdust.

I. Background

The AWA was enacted to regulate commerce with the following intentions:

**(1)** to insure that animals intended for use in research facilities or for
exhibition purposes or for use as pets are provided humane care and
treatment;

**(2)** to assure the humane treatment of animals during transportation in
commerce; and

**(3)** to protect the owners of animals from the theft of their animals by
preventing the sale or use of animals which have been stolen.

Congress further found that it is essential to regulate... the transportation,
purchase, sale, housing, care, handling, and treatment of animals by carriers or by
persons or organizations engaged in using them for research or experimental purposes
or for exhibition purposes or holding them for sale as pets or for any such purpose or
use. 7 U.S.C. Sec. 2131.

A license is required to operate as a dealer or exhibitor with respect to animals.
7 U.S.C. Sec. 2134. The terms "dealer," "exhibitor," and "animal" are defined in the

3

Case No. 8:13-CV-2895-T-17MAP

AWA and in the regulations. 7 U.S.C. Secs. 2132(f)(dealer), 2132(g)(animal), 2132(h) (exhibitor); 9 C.F.R. Sec. 1.1. An "exhibitor" is defined in relevant part as "any person (public or private) exhibiting any animals, which were purchased in commerce or the intended distribution of which affects commerce, or will affect commerce, to the public for compensation, as determined by the Secretary, and such term includes carnivals, circuses and zoos exhibiting such animal whether operated for profit or not...." 7 U.S.C. Sec. 2132(h).

A person whose license has been revoked is barred from buying, selling, exhibiting, and transporting animals. 9 C.F.R. Sec. 2.10(c)("Any person whose license has been...revoked shall not buy, sell, transport, exhibit or deliver for transportation, any animal during the period of...revocation"). Such a person is not prohibited from "handling" animals, which is defined as "petting, feeding, watering, cleaning, manipulating, loading, crating, shifting, transferring, immobilizing, restraining, treating, training, working and moving, or any similar activity with respect to any animal." 9 C.F.R. Sec. 1.1.

In the Complaint, Plaintiff THC alleges that Plaintiff hired Lancelot Kollman in 2012. Plaintiff further alleges:

> Hawthorn's representatives knew that Kollman's own USDA exhibitor's license had been revoked as a result of a procedural default, but Hawthorn also knew that many licensed exhibitors hire unlicensed individuals to handle and present their animals. Thus, Hawthorn (and Kollman) reasonably understood that even though Kollman was not licensed, he could train and present Hawthorn's tigers so long as he was Hawthorn's employee.

Plaintiff THC further alleges that Hawthorn began exhibiting the tigers with Kollman as their presenter in 2012. During 2012, Plaintiff provided APHIS with an itinerary of the tigers' expected destinations so that the agency always knew the tigers' location and

4

Case No. 8:13-CV-2895-T-17MAP

the individuals accompanying the tigers.  Plaintiff THC alleges that APHIS: 1) knew
Kollman was exhibiting Plaintiff's tigers; and 2) was free to inspect Hawthorn and
Kollman for compliance with the AWA and its regulations.

Plaintiff THC alleges that, under APHIS guidelines, when AWA inspectors
inspect traveling exhibitors like Hawthorn, they are required to pay "special attention" to
the training and experience of the handlers and employees of performing animals.
(Exh. 1, 6.16.13).  Plaintiff THC further alleges that after each inspection, an inspector
is required to conduct an exit briefing.  (Ex. 2, 9.1.3).  Plaintiff THC alleges that APHIS
inspectors repeatedly inspected Plaintiff's tigers with Kollman present, and reported no
violations, leading Hawthorn to believe that Kollman was free to work for Plaintiff THC
or another licensee.

Plaintiff THC alleges that after the 2012 season, during which Plaintiff exhibited
Plaintiff's tigers with Kollman as Plaintiff's employee, Plaintiff THC entered into a
contract with Soul Circus, Inc., to exhibit the same tiger act with the traveling UniverSoul
Circus, for which Soul Circus agreed to pay Plaintiff THC $672,000, ($7,000 per week,
January 18, 2013 until November 24, 2014).  Plaintiff THC transported the tigers to
Florida in January, 2013 to prepare for opening in Tampa on January 26, 2013.

Plaintiff THC further alleges that Soul Circus was aware that Kollman's license
had been revoked, and therefore contacted Dr. Chester A. Gipson, Deputy
Administrator of Animal Care for the USDA's Animal and Plant Health Inspection
Services ("APHIS") to seek reassurance that Kollman was allowed to present the tiger
act under Plaintiff Hawthorn's license.   Dr. Gipson stated that Kollman was not
permitted to handle or present Plaintiff's tigers, because his license had been revoked.
Thereafter, Soul Circus rescinded the contract with Plaintiff THC, and Plaintiff THC
incurred substantial costs for 7,000 pounds of meat to feed the tigers, freight costs,
additional handlers and sawdust.

5

Case No. 8:13-CV-2895-T-17MAP

Plaintiff THC's SF 95 Claim for Damage or Injury is attached to the Complaint. (Ex. 3). In the Claim, Plaintiff THC alleges that Plaintiff incurred "significant damages as a result of the inspectors' and investigators' negligence, including the loss of a contract that would have paid Plaintiff $672,000.00." In the letter attached to the Claim, Plaintiff THC states that "APHIS investigators are obligated to inspect for violations and report any violations to licensees so that they may be corrected. Their failure to notify Hawthorn of the apparent violation when they well knew of Kollman's presence and status proximately caused Hawthorn's loss of the Soul Circus contract and damages of $672,000.00."

An excerpt of the Animal Care Inspection Guide is attached to the Complaint as Exhibit 1, and Appendix 1, Inspection Requirements, is attached to the Complaint as Exhibit 2.

II.. Standard of Review

A motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure, can be a facial attack or a factual attack. In a facial attack, the factual allegations of the Complaint are taken as true. In a factual attack, the Court may consider matters outside the Complaint, and is free to weigh evidence and satisfy itself as to the existence of its power to hear the case. In a factual attack, the allegations of the Complaint are not presumptively true. Where the attack on jurisdiction implicates the merits of the plaintiff's federal cause of action, the Court should find that jurisdiction exists and deal with the objection as a direct attack on the merits of plaintiff's case, proceeding under Rule 12(b)(6) or Rule 56. The exceptions to this rule are narrowly drawn, and are intended to allow jurisdictional dismissals only in those cases where the federal claim is clearly immaterial or insubstantial. See Williamson v. Tucker, 645 F.2d 404 (5th Cir.), cert. denied, 454 U.S. 897 (1981).

6

Case No. 8:13-CV-2895-T-17MAP

In the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists. Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980).   Since the Government asserts the lack of subject matter jurisdiction, Plaintiff THC must show that the exceptions to the FTCA do not apply.

II. Discussion

The Federal Tort Claims Act provides a limited waiver of sovereign immunity. The FTCA opens the United States up to liability "for injury or loss of property ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment...." 28 U.S.C. § 1346(b)(1). The FTCA also includes statutory exceptions to the consent to be sued. 28 U.S.C. § 2680. The exceptions must be strictly construed in favor of the United States. JBP Acquisitions, LP v. U.S., 224 F.3d 1260, 1263 (11th Cir. 2000)(citing McNeily v. U.S., 6 F.3d 343, 347 (5th Cir. 1993)).  If one of the exceptions applies, the Court lacks subject matter jurisdiction. Id. at 1264.

A. Misrepresentation Exception

Defendant argues that Plaintiff THC's claims are within the misrepresentation exception, which bars claims wholly attributable to reliance on the Government's negligent misstatements. Block v. Neal, 460 U.S. 289, 297-298 (1983).   Defendant argues that Plaintiff THC does not allege an obligation to prevent Plaintiff from employing Kollman in certain capacities, but merely an obligation to inform Plaintiff of any regulatory violations.

Plaintiff THC responds that the misrepresentation exception does not bar negligence actions that focus on the breach of a different duty. Block at 297-298. Plaintiff argues that the Complaint does not allege that government officials made any

Case No. 8:13-CV-2895-T-17MAP

false statements; the substance of Plaintiff's claim is directed to the agency's separate negligent inspection that does not depend on any false statement. Plaintiff THC argues that the USDA inspectors did not find a violation that was right in front of them. Plaintiff THC argues that, if federal agency employees had been more careful, Plaintiff THC would not have passed inspection and incurred the losses it ultimately suffered due to the agency's delay in determining that Plaintiff THC in fact could not employ Kollman as a presenter. Plaintiff argues THC that the allegations fall within the "under taker" or Good Samaritan doctrine ("one who undertakes an act, even when under no obligation to do so, thereby becomes obligated to act with reasonable care") discussed in Block, under which the government breached its duty to exercise due care in inspecting Plaintiff's animal acts, which caused Plaintiff damage when Plaintiff THC relied on the inspection results.

Plaintiff THC argues that the theory of this case is regulatory negligence, such as that found in Appley Bros. v. United States, 7 F.3d 720 (8th Cir. 1993)(negligent failure to discover violations), and that the agency communicated incorrect inspection results or failed to advise Plaintiff is beside the point. Plaintiff THC further requests leave to amend the Complaint, if the Court believes that the Complaint does not sufficiently allege governmental negligence.

In Block v. Neal, the District Court dismissed Neal's complaint for failure to state a claim on which relief can be granted, finding no contractual duty to supervise the construction of Neal's home was created by the Federal Housing Act of 1949 and the regulations promulgated thereunder, or by the various agreements between the Farmers Home Administration and Neal. The Court concluded that the regulations requiring FmHA officials to ensure that the builder adhere to the terms of its construction contract were intended solely to protect the Government's security interest, and were not intended to make FmHA warrant the quality of construction for the benefit of those receiving rural assistance loans. The District Court also concluded that Neal

8

Case No. 8:13-CV-2895-T-17MAP

failed to state a claim against FmHA under applicable tort law. Neal v. Berglund, 489 F.Supp. 512 (E.D. Tenn. 1980). On appeal, the Sixth Circuit Court of Appeals reversed. 646 F.2d 1178 (6th Cir. 1981). The Sixth Circuit agreed that FmHA had no contractual obligation to provide Neal with technical assistance or to inspect and supervise construction of her house. The Court of Appeals found that Neal stated a claim for negligence under the principal that "one who undertakes to act, even though gratuitously, is required to act carefully and with the exercise of due care and will be liable for injuries proximately caused by failure to use such care. The Court of Appeals also noted that the FTCA, subject to express exceptions, authorizes suit against the Government for the negligence of a federal agency in performing a voluntary undertaking. The Court cited, inter alia, Indian Towing Co. v. United States, 350 U.S. 61 (1955) and Seaboard Coast Line Railroad Co. v. United States, 473 F.2d 714 (5th Cir. 1973).

In Block, the Supreme Court notes the narrow scope its determination, as the Government argued only that Neal's claim was a claim of misrepresentation within the meaning of Sec. 2680(h), and does not seek review of the threshold determination that Neal's complaint states a claim for negligence under the Good Samaritan doctrine that is otherwise actionable under the FTCA, or require the Court to consider whether recovery is barred by any other provision of the FTCA, including the exception for any action "based upon the exercise or performance or failure to exercise or perform a discretionary function."

1. Discussion

28 U.S.C. Sec. 2680(h) provides:

The provisions of this chapter and section 1346(b) of this title shall not apply to–

9

Case No. 8:13-CV-2895-T-17MAP

(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: Provided, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

Defendant United States of America argues that the misrepresentation exception bars any claim "arising out of....misrepresentation...." JBP Acquisitions, LP v. US, 224 F.3d 1260, 1264 (11th Cir. 2000). A cause of action which is distinct from one of those excepted under 28 U.S.C. Sec. 2680(h) will be deemed to "arise out of" an excepted cause of action when the underlying governmental conduct which constitutes an excepted cause of action is "essential" to a plaintiff's claim. Metz v. U.S., 788 F.2d 1528, 1533 (11th Cir. 1986). The misrepresentation exception "covers both affirmative acts of misrepresentation and omissions of material fact." McNeily v. U.S., 6 F.3d 343, 347 (5th Cir. 1993). Both the failure to provide accurate information to the public and the failure to properly instruct subordinates who made representations fall within the misrepresentation exception. See Ard v. FDIC, 770 F.Supp.2d 1029, 1039-1041 (C.D. Cal. 2011).

The test as to whether the misrepresentation exception applies is "whether the essence of the claim involves the government's failure to use due care in obtaining and communicating information." JBP, 224 F.3d at 1264. "It is the substance of the claim and not the language used in stating it which controls whether the claim is barred by an FTCA exception....[A] plaintiff cannot circumvent the misrepresentation exception simply through artful pleading of its claims." Id. The misrepresentation exception

Case No. 8:13-CV-2895-T-17MAP

applies if the reliance on the misrepresentation is part of the causal chain leading to the alleged injury.  See U.S. v. Neustadt, 366 U.S. 696, 703 (1961)(no injury alleged independent of reliance on erroneous appraisal).

a.  Plaintiff THC's Knowledge and Understanding

Plaintiff THC knew that Kollman's own exhibitor's license was revoked before Plaintiff THC hired Kollman in 2012.  (Dkt. 1, p. 2, par. 8).  Plaintiff THC also alleged "Plaintiff THC knew that many licensed exhibitors hire unlicensed individuals to handle and present their animals, and Plaintiff THC reasonably understood that, even though Kollman was not licensed, Kollman could train and present Plaintiff's tigers so long as Kollman was Plaintiff's employee."

Plaintiff THC is a corporation; employees of the corporation are Plaintiff's agents for the purposes of carrying out the corporation's business.  Since Plaintiff THC is licensed as an animal exhibitor, Plaintiff THC is charged with knowledge of and compliance with the rules and regulations promulgated by the Secretary.  9 C.F.R. 2.1(e) provides that the failure of any person to comply with any provision of the AWA, or any of the provisions of the regulations or standards, constitutes grounds for denial of a license, or for its suspension or revocation by the Secretary.   APHIS supplies a copy of the applicable regulations and standards to an applicant with each request for a license application; the applicant acknowledges receipt of the regulations and standards and agrees to comply with them by signing the application form before a license will be issued.  9 C.F.R. 2.2(a).

9 C.F.R.  Sec. 2.10 provides:

11

Case No. 8:13-CV-2895-T-17MAP

### § 2.10 Licensees whose licenses have been suspended or revoked.

(a) Any person whose license has been suspended for any reason shall not be licensed in his or her own name or in any other manner within the period during which the order of suspension is in effect. No partnership, firm, corporation, or other legal entity in which any such person has a substantial interest, financial or otherwise, will be licensed during that period. Any person whose license has been suspended for any reason may apply to the AC Regional Director, in writing, for reinstatement of his or her license. No license will be renewed during the period that it is suspended. Renewal of the license may be initiated during the suspension in accordance with §§ 2.2(b) and 2.12.

(b) Any person whose license has been revoked shall not be licensed in his or her own name or in any other manner; nor will any partnership, firm, corporation, or other legal entity in which any such person has a substantial interest, financial or otherwise, be licensed.

(c) Any person whose license has been suspended or revoked shall not buy, sell, transport, exhibit, or deliver for transportation, any animal during the period of suspension or revocation.

The plain meaning of the above regulation is that a person whose license has been revoked shall not exhibit or transport any animal.   An individual who is "unlicensed" is different from an individual whose license has been revoked, a scenario that is specifically addressed in the statute and regulations. The above regulation is not a new regulation. The Court is not required to accord Plaintiff's allegation of a reasonable understanding that Kollman could present Plaintiff's tigers as long as Kollman was Plaintiff's employee the presumption of truth. As a matter of law, Plaintiff's understanding could not be determined to be reasonable where it is at direct odds with a controlling regulation.

b. Inspection Reports

Plaintiff THC argues that Plaintiff's focus is on the alleged negligent performance of inspections, the reports of which revealed no non-compliance, leading Plaintiff THC to conclude that Kollman could present and train tigers for Plaintiff or another licensee.

12

Case No. 8:13-CV-2895-T-17MAP

9 C.F.R. 2.126, effective January 30, 2013, provides:

**§ 2.126 Access and inspection of records and property; submission of itineraries.**

(a) Each dealer, exhibitor, intermediate handler, or carrier, shall, during business hours, allow APHIS officials:

(1) To enter its place of business;

(2) To examine records required to be kept by the Act and the regulations in this part;

(3) To make copies of the records;

(4) To inspect and photograph the facilities, property and animals, as the APHIS officials consider necessary to enforce the provisions of the Act, the regulations and the standards in this subchapter; and

(5) To document, by the taking of photographs and other means, conditions and areas of noncompliance.

(b) The use of a room, table, or other facilities necessary for the proper examination of the records and inspection of the property or animals must be extended to APHIS officials by the dealer, exhibitor, intermediate handler or carrier, and a responsible adult shall be made available to accompany APHIS officials during the inspection process.

(c) Any person who is subject to the Animal Welfare regulations and who intends to exhibit any animal at any location other than the person's approved site (including, but not limited to, circuses, traveling educational exhibits, animal acts, and petting zoos), except for travel that does not extend overnight, shall submit a written itinerary to the AC Regional Director. The itinerary shall be received by the AC Regional Director no fewer than 2 days in advance of any travel and shall contain complete and accurate information concerning the whereabouts of any animal intended for exhibition at any location other than the person's approved site. If the exhibitor accepts an engagement for which travel will begin with less than 48 hours' notice, the exhibitor shall immediately contact the AC Regional Director in writing with the required information. APHIS expects such situations to occur infrequently, and exhibitors who repeatedly provide less than 48 hours' notice will, after notice by APHIS, be subject to

13

Case No. 8:13-CV-2895-T-17MAP

increased scrutiny under the Act.

(1) The itinerary shall include the following:

(i) The name of the person who intends to exhibit the animal and transport
the animal for exhibition purposes, including any business name and
current Act license or registration number and, in the event that any
animal is leased, borrowed, loaned, or under some similar arrangement,
the name of the person who owns such animal;

(ii) The name, identification number or identifying characteristics, species
(common or scientific name), sex and age of each animal; and

(iii) The names, dates, and locations (with addresses) where the animals
will travel, be housed, and be exhibited, including all anticipated dates and
locations (with addresses) for any stops and layovers that allow or require
removal of the animals from the transport enclosures. Unanticipated
delays of such length shall be reported to the AC Regional Director the
next APHIS business day. APHIS Regional offices are available each
weekday, except on Federal holidays, from 8 a.m. to 5 p.m.

(2) The itinerary shall be revised as necessary, and the AC Regional
Director shall be notified of any changes. If initial notification of a change
due to an emergency is made by a means other than email or facsimile, it
shall be followed by written documentation at the earliest possible time.
For changes that occur after normal APHIS business hours, the change
shall be conveyed to the AC Regional Director no later than the following
APHIS business day. APHIS Regional offices are available each
weekday, except on Federal holidays, from 8 a.m. to 5 p.m.

Prior to the effective date of the above Regulation, the submission of an itinerary

was a matter of APHIS policy, as expressed in the Animal Care Inspection Guide

issued September, 2010. (Dkt. 1-1, p. 15). The previous version of the 9 C.F.R. Sec.

2.126 addressed only access and inspection of records and property.

In the Complaint, Plaintiff THC alleges that in 2012 Defendant knew Kollman

was exhibiting Plaintiff THC's tigers through Plaintiff's submission of an itinerary. (Dkt.

1, p. 2, par. 9). "The agency always knew the tigers' location and the individuals

14

Case No. 8:13-CV-2895-T-17MAP

accompanying them." The Court understands this allegation to mean that Plaintiff THC notified Defendant that Kollman was exhibiting and transporting Plaintiff's tigers throughout 2012 under Plaintiff's license whenever Plaintiff THC submitted an itinerary to Defendant. An itinerary documents the dates away from an exhibitor's home facility, the city and state of all stops, and the site address of all stops.

The Inspection Report attached to the Complaint is directed to Plaintiff THC, referring to Certificate 33-C-0053. Plaintiff THC's knowledge of the AWA and the rules and regulations promulgated preceded Plaintiff's decision to hire Kollman in 2012. Before allowing Kollman to exhibit Plaintiff's tigers, Plaintiff THC knew that Kollman's license as an exhibitor was revoked; the only animal exhibitor's license that could have been made available during the relevant time was Plaintiff THC's license. The Animal Care Inspection Guide acknowledges the need for a separate inspection report for each licensed exhibitor. For example, the Animal Care Inspection Guide states:

**CIRCUSES**
Circuses may be:

X   covered under one exhibitor's license or
X   composed completely of individually licensed
    exhibitors who work for the circus. In this case, a
    separate inspection must be completed for each
    licensee.
X   composed of a combination of a licensed circus and
    individually licensed exhibitors. In this case:

> one inspection report should be
> completed for the licensed circus
> itself and should include all the
> regulated animals covered under
> the circus's license and
> separate inspection reports
> should be competed for each
> individually licensed exhibitor
> NOTE: It is important to know

15

Case No. 8:13-CV-2895-T-17MAP

> which exhibitor's license covers
> the particular animals you are
> inspecting.  It is common for
> exhibitors/animal acts to travel
> with more than one circus in a
> touring season.

(Dkt. 1-1, pp. 9-10).  The only Inspection Report attached to the Complaint is directed to
Plaintiff THC, under Plaintiff THC's license only.   The Inspection Report does not alter
Plaintiff THC's knowledge of and duty to comply with the AWA, and the rules and
regulations promulgated by the Secretary.

In the Complaint, Plaintiff THC alleges that Cynthia DiGesualdo and an APHIS
investigator met with Kollman for an hour on October 18, 2012, and required Kollmann
to provide proof that he was Plaintiff THC's employee and did not himself own the tigers
he was handling.  Plaintiff alleges that DiGesualdo and the investigator gave no
indication that Plaintiff THC was in violation of any rules despite Kollman's presence,
and their demand for proof of Kollman's employment "suggested that Kollman was in
fact free to work for Plaintiff THC."  Plaintiff THC is free to employ individuals such as
Kollman, an individual whose exhibitor license is revoked, to "handle" tigers; Plaintiff's
allegations as to the meeting on October 18, 2012 do not involve any activity that runs
afoul of 9 C.F.R. 2.10:  "Buy, sell, transport, exhibit or deliver..."  DiGesualdo and the
investigator verified that Kollman was not handling animals owned by Kollman (i.e.
bought by Kollman) and that Kollman was handling tigers owned by a licensed
exhibitor, Plaintiff THC, by whom Kollman was employed.

In the Complaint, Plaintiff THC does not use the word "reliance"; instead, Plaintiff
THC alleges that the absence of an inspection report citing a violation of the license
requirement "led [THC] to believe" that Kollman could work for THC or another licensee.
In other words, Plaintiff THC alleges Plaintiff THC relied on the repeated inspection
reports stating "No non-compliant items identified during this inspection" in forming

16

Case No. 8:13-CV-2895-T-17MAP

Plaintiff's opinion that Kollman could work for THC under Plaintiff THC's license to exhibit the tigers.   Plaintiff THC alleges that Drs. Gipson, Goldentyer and DiGesualdo failed to "inform," "tell," and/or "advise" Plaintiff THC regarding the limitations on Kollman's activities as a result of the revocation of Kollman's license.   The other allegation of negligence, the "failure to properly instruct APHIS inspectors," later caused Plaintiff harm when Defendant did not provide correct information.

The allegations of Plaintiff's Complaint bring Plaintiff THC's claims for negligence within the misrepresentation exception, under the theory that Defendant's agents omitted to communicate material facts to Plaintiff THC.   Based on the allegations of the Complaint, reliance is part of the causal chain leading to the alleged  injury to Plaintiff THC, the rescission of the Soul Circus contract.     After consideration, the Court finds that the allegations of Plaintiff's Complaint bring Plaintiff's claims for negligence within the misrepresentation exception.  The Court therefore grants Defendant's Motion to Dismiss the Complaint for lack of subject matter jurisdiction.

B.  Discretionary Function Exception

In the Complaint, Plaintiff THC alleges that Plaintiff THC notified Defendant that Kollman was presenting and exhibiting Plaintiff's tigers in 2012.  In light of Defendant's presumed knowledge of the status of Kollman's license, and Defendant's knowledge of Kollman's exhibition and transport of the tigers based on submission of an itinerary, Defendant's knowledge of a possible violation preceded any inspection that was later conducted.  Plaintiff THC complains that the inspection reports which stated "no noncompliance" lulled Plaintiff THC into thinking that Kollman was permitted to exhibit Plaintiff's tigers and could do so for other entities.

Case No. 8:13-CV-2895-T-17MAP

1. Animal Care Inspection Guide

The attachment to the Complaint is an excerpt of the Animal Care Inspection Guide, a document that was made available to the public on the Internet.  APHIS announced in March, 2012 that, effective April 6, 2012, APHIS was removing from its Web site all previous versions of the inspection guides used by the agency's Animal Care program, replacing them with a consolidated Animal Care Inspection Guide to reduce confusion and streamline information for inspectors, regulated facilities and stakeholders.

The Animal Welfare Inspection Guide was published in September, 2013, and is a more recent version of the Animal Care Inspection Guide.  The preliminary provisions of the Animal Welfare Inspection Guide state:

**Purpose**

The purpose of the Animal Welfare Inspection Guide is to provide an aid for APHIS Animal Care personnel when inspecting USDA licensed and registered facilities.

The Inspection Guide is not a regulation and does not rise to the level of policy.  It serves as a tool to improve the quality and uniformity of inspections, documentation, and enforcement of the Animal Care Program.

**Philosophy**

The Inspection Guide is designed to **facilitate** the decision-making process.  It **cannot**, nor is it intended to, replace the inspector's professional judgment.

**Scope**

The Inspection Guide **summarizes** current regulatory and procedural criteria for USDA licensed/registered facilities, and provides examples of inspection processes for verifying compliance.  It does **not** add to, delete

18

Case No. 8:13-CV-2895-T-17MAP

from, or change current regulatory requirements or standards.

**Disclaimer**

The Animal Welfare Inspection Guide is intended to be a reference document to assist the inspector. The Inspection Guide does not supersede the Animal Welfare Act (AWA), the AWA Regulations and Standards, the AC Policy Manual, the Required Inspection Procedures, standard procedures, or the inspector's professional judgment. All inspection decisions must be justified by applicable sections of the regulations and standards.

(Animal Welfare Inspection Guide, 09/2013 edition, p. 15).

2. Discretionary Function Exception

The Parties did not address the discretionary function exception; the Court addresses it below in the interest of completeness. The challenged conduct includes the failure to notify APHIS investigators that Kollman could not handle, train or present tigers for Plaintiff, the failure to instruct APHIS investigators to report that THC was in violation of the AWA and its regulations if they found Kollman was handling, training or presenting tigers for Plaintiff, and the failure to tell Plaintiff that Kollman could not handle, train or present tigers under its license. Plaintiff has argued that the USDA inspectors did not find a violation that was right in front of them, and the negligent performance of the duty to exercise due care in inspecting Plaintiff's animal acts caused Plaintiff damage when Plaintiff THC relied on the inspection results.

7 U.S.C. Sec. 2146 provides:

**§ 2146. Administration and enforcement by Secretary**

(a) Investigations and inspections

The Secretary shall make such investigations or inspections as he deems necessary to determine whether any dealer, exhibitor, intermediate

19

Case No. 8:13-CV-2895-T-17MAP

    handler, carrier, research facility, or operator of an auction sale subject to
section 2142 of this title, has violated or is violating any provision of this
chapter or any regulation or standard issued thereunder, and for such
purposes, the Secretary shall, at all reasonable times, have access to the
places of business and the facilities, animals, and those records required
to be kept pursuant to section 2140 of this title of any such dealer,
exhibitor, intermediate handler, carrier, research facility, or operator of an
auction sale. The Secretary shall inspect each research facility at least
once each year and, in the case of deficiencies or deviations from the
standards promulgated under this chapter, shall conduct such follow-up
inspections as may be necessary until all deficiencies or deviations from
such standards are corrected. The Secretary shall promulgate such rules
and regulations as he deems necessary to permit inspectors to confiscate
or destroy in a humane manner any animal found to be suffering as a
result of a failure to comply with any provision of this chapter or any
regulation or standard issued thereunder if (1) such animal is held by a
dealer, (2) such animal is held by an exhibitor, (3) such animal is held by a
research facility and is no longer required by such research facility to carry
out the research, test, or experiment for which such animal has been
utilized, (4) such animal is held by an operator of an auction sale, or (5)
such animal is held by an intermediate handler or a carrier.

    The terms of the Sec. 2146 indicate that inspections are to be performed as the

Secretary deems necessary to determine whether any exhibitor has violated or is

violating any provision of the AWA or any regulation or standard issued under the AWA.

Sec. 2146 shows that the performance of inspections may fall within 28 U.S.C. Sec.

2680(a):

    **(a)** Any claim based upon an act or omission of an employee of the
Government, exercising due care, in the execution of a statute or
regulation, whether or not such statute or regulation be valid, or based
upon the exercise or performance or the failure to exercise or perform a
discretionary function or duty on the part of a federal agency or an
employee of the Government, whether or not the discretion involved be
abused.

    To determine whether the discretionary function exception applies, the Court first

determines whether the act involves an element of judgment or choice. U.S. v.

Gaubert, 499 U.S. 315, 322 (1991). Where a federal statute, regulation or policy

Case No. 8:13-CV-2895-T-17MAP

specifically prescribes a course of action for an employee to follow, there is no judgment or choice involved. The inquiry focuses on "whether the controlling statute or regulation mandates that a government agent perform his or her function in a specific manner. "A decision will be subject to the exception unless "a federal statute, regulation or policy specifically prescribes a course of action embodying a fixed or readily ascertainable standard." Hughes v. U.S., 110 F.3d 765, 768 (11th Cir. 1992).

If the conduct does involve an element of judgment or choice, the Court then considers "whether that judgment is of the kind that the discretionary function exception was designed to shield. Gaubert, 499 U.S. at 322-23. The exception is intended "to 'prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" Id. "When properly construed, the exception 'protects only governmental actions and decisions based on considerations of public policy.'" Gaubert, 499 U.S. at 323.

The Court must determine whether the questioned act is "susceptible to policy analysis.'" Hughes, 110 F.3d at 768. The exception does not requires there to have been actual "weighing of policy considerations." The Court focuses on "'the nature of the challenged decision in an objective, or general sense, and asks whether that decision is one [the Court] would expect inherently to be grounded in considerations of policy. If the decision is inherently one allowing discretion, [the Court] presume[s] the act was grounded in policy whenever that discretion is employed. Gaubert, 499 U.S. at 324; Hughes, 110 F.3d at 768.

The provisions of Sec. 2146 state that the Secretary shall make investigations "as he deems necessary." The Court also notes additional provisions of the AWA, 7 U.S.C. Sec. 2149 and 7 U.S.C. Sec. 2159. Pursuant to 7 U.S.C. Sec. 2149, if the Secretary has reason to believe that an exhibitor has violated or is violating any provision of the AWA, its rules, regulations or standards, the Secretary may temporarily

Case No. 8:13-CV-2895-T-17MAP

suspend the exhibitor's license for 21 days, and after notice and a hearing, may extend the suspension or revoke the license upon a determination that the violation has occurred.  The Secretary may impose civil penalties for each separate violation and may enter an order to  cease and desist from continuing the violation.  The imposition of civil penalties is guided by consideration of the size of the business, the gravity of the violation, the person's good faith, and the history of previous violations.  Final orders are subject to review in the appropriate United States Court of Appeals.    Criminal penalties may be imposed for knowing violations of any provision of the AWA upon conviction at trial.

Pursuant to 7 U.S.C. Sec. 2159, when the Secretary has reason to believe that an exhibitor is placing the health of any animal in serious danger, in violation of the AWA or the regulations and standards promulgated under the AWA, the Secretary shall notify the Attorney General, who may apply to the appropriate United States District Court for a temporary restraining order or injunction to prevent such person from operating in violation of the AWA or the regulations and standards prescribed under the AWA.

Inspections are to be performed "as the Secretary deems necessary," to determine whether an exhibitor is violating or has violated the AWA.  Inspections are a matter of discretion, under the terms of the statute and regulations.    The suspension of a license and imposition of civil penalties is a matter of discretion, based on the terms of the controlling provision, but when the Secretary has reason to believe that the health of any animal is in serious danger, the Secretary must notify the Attorney General, a mandatory function.

Site inspections are one way for APHIS inspectors to determine whether an exhibitor is complying with all applicable regulations and standards.  APHIS has issued detailed guidance to its inspectors as to various types of inspections, identifying areas the inspector to which the inspector should pay special attention.  Bearing in mind the

22

Case No. 8:13-CV-2895-T-17MAP

intent of the AWA, inter alia, to insure that exhibited animals are provided humane care and treatment, there is not only one way to perform every inspection.   The general guidance provided in the Animal Care Inspection Guide is subject to the professional judgment of the inspector, cited in the Animal Care Inspection Guide.   (Dkt. 1-1, pp. 10, 12, 13).   The detailed guidelines are intended to promote uniformity, not establish one course of action without the exercise of judgment.   Even if the inspections at issue were determined to be conducted negligently, the inspections would still fall within the discretionary function exception.   Cranford v. U.S., 466 F.3d 955 (11th Cir. 2006).

The decision to pursue a particular enforcement action, or impose sanctions to compel an exhibitor to comply with all standards and regulations involves an administrative decision based on appropriate use of the agency's resources.   This decision to allocate an agency's resources is subject to policy analysis,  which indicates a discretionary function.   An agency has broad discretion to choose how best to marshal its limited resources and personnel to carry out its delegated responsibilities. Chevron USA, Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-845 (1984). An agency's decision not to bring a specific enforcement action is presumed to be unreviewable, Heckler v. Chaney, 470 U.S. 821 (1985), but the presumption is rebuttable where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers.   A challenge to an agency's decision not to enforce the AWA with regard to a specific incident is an unreviewable decision because such a decision is committed to agency discretion by law.  People for the Ethical Treatment of Animals v. United States Department of Agriculture, 7 F.Supp.3d 1, 10-11 (D.D.C. 2013)("as he deems necessary" forecloses application of meaningful judicial standard of review) .   In light of the agency's unlimited discretion, as a matter of law, Plaintiff THC cannot rely on the absence of an enforcement action, to support Plaintiff THC's negligence claims.

Even if it is determined that the substance of Plaintiff's negligence claims is not

Case No. 8:13-CV-2895-T-17MAP

within the misrepresentation exception, the Court would still grant the Motion to
Dismiss on the basis of the discretionary function exception. The agency has unlimited
discretion, and the actions of the agency employees when exercising their discretion in
conducting inspections are presumed to be grounded in the policies underlying the
statute.

C.  Interference With Contract Rights Exception

The FTCA also prohibits claims against the United States "arising out
of...interference with contract rights." 28 U.S.C. Sec. 2680(h). If a claim of negligence
involves the duty "not to interfere with the plaintiff's economic relationship with third
parties," then the exception applies, and the Court lacks subject matter jurisdiction.
O'Ferrell v. U.S., 968 F.Supp.1519, 1530 (M.D. Ala. 1997)(quoting Art Metal-U.S.A, Inv.
v. U.S., 753 F,2d 1151 (D.C. Cir. 1985). When a plaintiff alleges negligence that leads
to financial harm via the termination of a contract, the exception for interference with
contract rights precludes the claim. Cadman v. U.S., 541 Fed. Appx. 911(11th Cir.
2013)(claim that failure to provide accurate information to plaintiff's employer led to
termination barred by interference with contract rights exception); Cooper v. Am. Auto
Ins. Co., 978 F.2d 602, 613 (10th Cir. 1992)(allegation of negligent investigation by
government leading to termination of a contract and loss of future business barred by
exceptions to FTCA, including interference with contract rights exception).

In the Complaint, Plaintiff THC alleges that Defendant's actions interfered with
the contractual relationship between Plaintiff THC and Soul Circus. In the Complaint,
Plaintiff alleges that, "[a]s a result of Gipson's about face, Soul Circus rescinded its
contract with Hawthorn..." (Dkt. 1, p. 4, par. 15).

Plaintiff's Complaint is predicated on repeated AWA inspection reports that
indicated "no noncompliance" during 2012, such that licensee Plaintiff THC formed the

24

Case No. 8:13-CV-2895-T-17MAP

opinion that Kollman could exhibit and transport Plaintiff's tigers, or could do so for another licensee. Soul Circus knew of the revocation of Kollman's license before entering into the contract. After signing the contract, Soul Circus contacted APHIS to seek reassurance that Kollman was allowed to present the tiger act under Plaintiff THC's license. Soul Circus rescinded the contract after learning that Kollman was not permitted to exhibit Plaintiff THC's tigers as Plaintiff THC's employee, because his license had been revoked.

The statutory provision, 7 U.S.C. Sec. 2143, and regulation, 9 C.F.R. Sec. 2.10, which prohibit an individual whose license has been revoked from exhibiting or transporting animals are written in plain, unambiguous language. To the extent that Plaintiff THC alleges that the loss of the Soul Circus contract was caused by Defendant's alleged negligent inspections that did not alert Plaintiff THC that Kollman could not exhibit or transport Plaintiff's tigers since Kollman's license had been revoked, Plaintiff's claim falls within the interference with contracts exception to the FTCA.

After consideration, the Court grants Defendant's Motion to Dismiss as to the interference with contracts exception. Accordingly, it is

**ORDERED** that Defendant's Motion to Dismiss (Dkt. 5) for lack of subject matter jurisdiction is **granted**. Plaintiff's Complaint is **dismissed without prejudice**, and without leave to amend. The Clerk of Court shall close this case and terminate all other pending motions.

Case No. 8:13-CV-2895-T-17MAP

**DONE and ORDERED** in Chambers, in Tampa, Florida on this 24th day of March, 2015.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:
All parties and counsel of record

26